```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                        CLARKSBURG
```

**WEST VIRGINIA UNITED HEALTH**
**SYSTEM, INC.** *d/b/a* **WEST VIRGINIA**
**UNIVERSITY HEALTH SYSTEM,**

      **Plaintiff,**

**v.**                                       **CIVIL ACTION NO. 1:25-CV-34**
                                                                         **(KLEEH)**

**GMS MINE REPAIR AND MAINTENANCE,**
**INC. EMPLOYEE MEDICAL PLAN and**
**THE HEALTH PLAN OF WEST VIRGINIA, INC.,**

      **Defendants.**

```
          MEMORANDUM OPINION AND ORDER GRANTING
          PLAINTIFF'S MOTION TO REMAND [ECF NO. 14]
```

Pending before the Court is *Plaintiff's Motion to Remand* [ECF No. 14]. For the reasons discussed herein, the Motion is **GRANTED**, and this matter is hereby **REMANDED** to the Circuit Court of Monongalia County, West Virginia, for any further proceedings.

### I. PROCEDURAL HISTORY

Plaintiff, West Virginia United Health System, Inc. ("WVUHS"), filed a Complaint in the Circuit Court of Monongalia County, West Virginia on February 15, 2024. ECF No. 1-2 in Case No. 1:24-cv-35. Before filing any responsive pleading, Defendant, The Health Plan of West Virginia, Inc. ("THP"), removed the case to this Court. ECF No. 1 in Case No. 1:24-cv-35. On May 2, 2024, WVUHS filed a Motion to Remand. ECF No. 16 in Case No. 1:24-cv-35. The Court convened for a hearing on the that Motion on February

12, 2025, and granted the motion on February 21, 2025. ECF No. 29 in Case No. 1:24-cv-35. After being remanded, this case was removed to this Court a second time on April 14, 2025, by Defendant, GMS Mine Repair and Maintenance, Inc. Employee Medical Plan ("GMS"). ECF No. 1 in Case No. 1:25-cv-34. The Notice of Removal purports that there is a new basis for removal jurisdiction because Plaintiff did possess assignments of benefits and because GMS attached "an explicit written waiver of the anti-assignment provision." Id.

Accordingly, Plaintiff moved for a second time to remand this matter to state court. ECF No. 14. Defendants filed their response in opposition to remand on June 20, 2025. ECF No. 23. On July 16, 2025, Plaintiff replied in further support of remand. ECF No. 24. This matter is thus fully briefed and ripe for review.

## II.  FACTUAL BACKGROUND

WVUHS is a healthcare provider comprised of twenty affiliated hospitals and other medical facilities. Compl., ECF No. 12, at ¶ 1.[1] GMS is a mining services company that operates a self-funded health plan for its employees (the "Plan"). Id. at ¶ 2. THP is a West Virginia insurance company that acts as a third-party administrator for the GMS self-funded health plan but also

---

[1] All ECF citations in this section are from the original case, 1:24-cv-35.

2

simultaneously manages claims for traditional commercial health insurance products. Id. at ¶¶ 3, 10.

WVUHS and THP had an existing contract for a negotiated payment rate of medical services for its traditional commercial health insurance. Id. at ¶ 10. However, THP did not "prospectively negotiate any contracts for the GMS self-funded health plan that THP administered." Id. Without a negotiated contract, GMS's employees are considered "non-participating" and generally do not have access to WVUHS facilities for medical services other than certain emergency situations. Id. On July 7, 2022, WVUHS discovered that THP was processing hospital claims for GMS beneficiaries using a Reference-Based Pricing payment scheme. Id. at ¶ 11.[2]

Despite the lack of a contractual agreement, WVUHS noted that GMS's employees who were a part of GMS's self-funded health plan presented to WVUHS facilities. Id. at ¶ 16. WVUHS alleges in the Complaint that GMS's employees "frequently received non-emergent care because their member cards fraudulently imitated those of THP's participating traditional commercial health insurance plan." Id. WVUHS alleges that GMS's member cards looked like THP's commercial insurance member cards, including THP's logo and

---

[2] "RPB is a payment methodology in which a payor, often a self-insured employer via a third-party administrator, sets its own price for medical services rendered to its participants instead of prospectively negotiating prices with a healthcare provider in order for the payor's members to be 'participating in network' with the healthcare provider." Compl., ECF No. 12, at ¶ 12.

3

address for claims submission. Id. at ¶ 17. WVUHS alleges that the "fraudulent" inclusion of the logo and address induced WVUHS's registration specialists to reasonably believe that GMS member claims were in network because of the preexisting contract between WVUHS and THP for their commercial plans. Id.

WVUHS alleges that GMS's cards said that "Assignment of Benefits (AOB) is a waiver of the Provider's right to balance bill the patient," preventing them from recovering the unpaid balance of services from GMS members that GMS and THP discounted or refused to reimburse. Id. at ¶ 19. WVUHS also alleges that GMS's member cards attempt to establish an accord and satisfaction by stating that "[d]epositing checks received from the [GMS] Plan represents accord and satisfaction and will take precedence over any previous terms." Id. at ¶ 20.

WVUHS alleges that "GMS's members cards attempt to create implied in fact contracts with accord and satisfaction to allow it to discharge its duties to fully cover its members and prevent WVUHS from seeking to recover any outstanding balance from GMS's members." Id. at ¶ 21. WVUHS alleges that GMS and THP have not been reimbursing it at a reasonable commercial rate, but instead on a fraudulent "pay-what-they-wish" RBP scale, resulting in at least $2,500,000.00 in losses. Id. at ¶¶ 25-26.

As of January 1, 2023, THP contractually agreed to reimburse WVUHS for the RBP plans at a contracted commercial rate, but WVUHS

4

alleges that neither GMS or THP has appropriately paid WVUHS for the services from 2020-2022. Id. at ¶¶ 30-31. WVUHS alleges that instead of a commercially reasonable rate of 90% of total billed charges, GMS and THP reimbursed WVUHS at a rate of 37% of total billed charges. Id. at ¶ 32.

In its Complaint, WVUHS alleged ten common law causes of action:

> Count I (GMS): Quantum Meruit
> Count II (GMS): Unjust Enrichment
> Count III (THP): Unjust Enrichment
> Count IV (GMS and THP): Negligent Misrepresentation
> Count V (GMS and THP): Intentional Misrepresentation
> Count VI (GMS and THP): Concealment
> Count VII (GMS and THP): Fraud
> Count VIII (GMS and THP): Estoppel
> Count IX (GMS and THP): Civil Conspiracy
> Count X (GMS and THP): Punitive Damages

### III. LEGAL STANDARD

Federal courts "are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the

matter." Strawn v. AT & T Mobility, 530 F.3d 293, 296 (4th Cir. 2008) (citation omitted).

Federal courts "'are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated' and that 'if federal jurisdiction is doubtful, a remand to state court is necessary.'" Palisades Collections LLC v. Shorts, 552 F.3d 327, 333-34 (4th Cir. 2008) (citations omitted).

This Court has previously stated that "[a]ll doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction." Vitatoe v. Mylan Pharmaceuticals, Inc., 2008 WL 3540462, at *2 (N.D. W.Va. Aug. 13, 2008)(Keeley, J.). When considering a motion to remand, the Court is limited to considering the record at the time of removal. See Lowrey v. Ala. Power Co., 483 F.3d 1184, 1213-15 (11th Cir. 2007).

Removal is appropriate when a "civil action [is] brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. Federal courts have subject matter jurisdiction over cases where a "federal statute creates the cause of action" so that the case "arise[s] under" federal law. Childers v. Chesapeake & Potomac Tel. Co., 881 F.2d 1259, 1261 (4th Cir. 1989); Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986).

## IV.  DISCUSSION

GMS removed this action for a second time under federal question jurisdiction, again asserting that the GMS plan is a self-funded employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). For the second time, GMS argues that ERISA expressly and completely preempts WVUHS's claim under federal question subject matter jurisdiction. ECF No. 1 in Case No. 1:25-cv-34, at p. 2. WVUHS maintains that this action was improperly removed and that this Court still lacks subject matter jurisdiction over the claims at issue. ECF No. 14-1 in Case No. 1:25-cv-34, at p. 2. As elaborated upon below, ERISA preemption is still improper in this case and remand is necessary. Additionally, the Court incorporates its prior rulings and findings from the first Memorandum Opinion and Order granting remand. ECF No. 2 in Case No. 1:24-cv-35.

Collateral estoppel is a doctrine that precludes relitigation of an issue. "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979).

A party seeking to rely on collateral estoppel must establish five elements: (1) that the issue previously decided is identical to the issue in the current action; (2) that the issue was actually

7

determined in the previous proceeding; (3) that the determination of the issue was "a critical and necessary part of the decision in the prior proceeding; (4) that the prior judgment is final and valid;" and, "(5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue" in the prior case. Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006) (internal citations omitted).

Collateral estoppel generally applies only against persons who were parties to a previous suit, because nonparties usually would not have had a full and fair opportunity to litigate the issues. Virginia Hosp. Ass'n v. Baliles, 830 F.2d 1308, 1312 (4th Cir.1987).

Here, the Court finds that GMS is collaterally estopped from removing this case for a second time. The first element of collateral estoppel is satisfied because the issue of ERISA preemption in the first removal attempt is identical to the issue of ERISA preemption in the current removal attempt. In both instances, Defendants try to claim that Plaintiff has derivative standing under the governing ERISA plan. Additionally, the second element of collateral estoppel is met because the issue of standing was actually determined in this Court's granting of the previous motion to remand. ECF No. 29 in Case No. 1:24-cv-35. This Court specifically stated that "[u]nder the plain language of the Plan, the anti-assignment provision appears valid and therefore, WVUHS

8

could not bring a suit under ERISA even if there were a written assignment of benefits. Thus, WVUHS does not have standing to sue THP under ERISA." Id.

The third, fourth, and fifth elements are easily satisfied. The issue of standing was the most critical and necessary part of the decision in the prior removal attempt, as it was the only issue addressed by the Court, and the Court's order granting remand is both final and valid. Finally, the parties remained the same in both removal attempts. Defendants, whom collateral estoppel is asserted against, had a full and fair opportunity to litigate the issue in the first removal attempt.

The Court is not persuaded by GMS's blatant attempt to manufacture jurisdiction. GMS attached a waiver of the anti-assignment provision to its Notice of Removal only after the case had already been remanded for the lack of federal jurisdiction. GMS did not attempt to waive the provision at any point in the litigation prior to the Court's determination that the anti-assignment provision was valid. The Court finds that GMS's removal attempt at issue showcases that GMS is now trying to change and manipulate the terms of the governing plan to create federal jurisdiction. WVUHS is not a party to the ERISA plan, and it is not seeking rights available under the plan. As this Court previously ruled, WVUHS does not have standing to sue under ERISA, nor does this Court have jurisdiction over WVUHS's state law

9

claims. GMS's conduct runs afoul good faith and fair dealing and its behavior cannot be condoned. As such, GMS' attempts remain unavailing, and the Court **GRANTS** the Plaintiff's Motion for Remand [ECF No. 14].

## IV   CONCLUSION

For the reasons discussed above, this Court lacks subject matter jurisdiction and the Motion to Remand [ECF No. 14] is **GRANTED**. This action is hereby **REMANDED** to the Circuit Court of Monongalia County, West Virginia.

The Clerk shall **STRIKE** this action from the Court's active docket and **TERMINATE** all pending motions, hearings, or deadlines.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record and the Circuit Clerk of Monongalia County, West Virginia.

**DATED**: December 2, 2025

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA